

RECEIVED

OCT 2 1 2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| Wilfrido Juan Pujols | ) | |
| a/k/a Wil Pujols | ) | |
| Petitioner | ) | |
| -vs- | ) | |
| | ) | Case No. _____ |
| Pujols Family Foundation | ) | |
| and | ) | |
| Deidre Pujols, | ) | |
| In her individual capacity | ) | **JURY TRIAL DEMANDED** |
| and | ) | |
| Jose Alberto Pujols | ) | COUNT 1. DEFAMATION |
| a/k/a Albert Pujols | ) | COUNT 2. INTENTIONAL |
| In his individual capacity | ) | INFLICTION OF EMOTIONAL |
| Defendants | ) | DISTRESS |

## COMPLAINT FOR DAMAGES

Plaintiff, Wilfrido Juan Pujols, brings this Complaint for defamation (Libel) and intentional infliction of emotional distress; against the Pujols Family Foundation, Deidre Pujols and Albert Pujols (Defendants); The facts are as follows:

1

## JURISDICTION AND VENUE

1. This Court enjoys subject matter jurisdiction over this action under 28
   U.S.C. § 1332(a)(1) because the Plaintiff and Defendants are citizens of
   different states and the amount in controversy exceeds $75,000.

2. This Court enjoys Personal Jurisdiction over the Defendants because the
   false and Defamatory statement made by the Defendants were published in
   the State of Missouri, and the Defendants are residents of the state of
   Missouri.

3. This Court enjoys venue under 28 U.S.C. § 1391(a)(2)  because all or a
   substantial portion of the events that have given rise to the Plaintiff's claim
   transpired in the State of Missouri including the publishing of the
   defamatory falsehood and the damage to the Plaintiff's reputation.

## PARTIES

4.  Plaintiff, Wilfrido Juan Pujols, M, age 29, is a former professional baseball
   player of the St. Louis Cardinals organization. He was drafted by the
   Cardinals out of Fort Osage high school as their 6th round pick of the 2005
   MLB Draft and given a signing bonus of 120 thousand dollars. Since August
   2007, he has worked on and off, as a professional hitting instructor. On or

2

around January 2014, he became active again playing baseball. He invested
much time, money and energy in order to seek employment with an
Independent or Major League Baseball affiliate. He is currently a
Self-employed Sports Agent and Owner of Team Pujols Sports &
Entertainment LLC. He resides in St. Lucie County, FL 34953.

5. Defendant Pujols Family Foundation, is a not for profit organization exempt
from taxation under IRS 501(c)(3) located in the State of Missouri with its
principal place of business in St. Louis. According to its mission, it is an
"organization benefiting people with (a) Down syndrome (b) disabilities
and/or life threatening illnesses as well as (c) children and families living in
impoverished conditions in the Dominican Republic."

6. Defendant Deidre Pujols, F, 39, is the wife of Jose Alberto Pujols and
President of the Pujols Family Foundation. She is also CEO of Pujols
Kitchen LLC. She resides in Chesterfield, MO 63005 and owns property in
Overland Park, KS 66224.

7. Defendant, Jose Alberto Pujols, M, age 36, is the "Founder and Chairman"
of the Pujols Family Foundation. He is also a professional baseball player
for the Los Angeles Angels of Anaheim. Before signing with the Angels in
December 2011, he was a player of the St. Louis Cardinals from 2000 to

3

2011. He resides in Chesterfield, MO 63005 and owns property in Irvine, CA .

8. "Defendants" used in the plural form in this complaint will refer to all Defendants.

9. The "Third Party" mentioned in this complaint will refer to Cheryl Cooper, F, whom resides in  Independence, MO. 64055. She is the mother of Christopher Cooper who died on November 9, 2007.

### BACKGROUND

10. That on or around August 2007, the Plaintiff, a then and current resident of the State of Florida, started a job as a contracted professional baseball instructor at the Tom Urquhart School of Baseball at 7875 Mastin Dr. Overland Park, Kansas. He was instructing kids of all ages, from as young as 6 to 17. He was making an income of ($25) twenty-five dollars an hour. Tom Urquhart was also helping the Plaintiff with training, so he could be ready for baseball tryouts. The Plaintiff was scheduled to tryout for the Chicago White Sox in early January 2008.

11. That on or around November 9, 2007, the brother of the Plaintiff, Wilfredo Pujols Jr. age 33, was charged with multiple felonies including second degree felony murder, in connection with the death of late Christopher

4

Cooper, of Independence, MO. Pujols Jr. struck Christopher Cooper with his vehicle as he was being pursued by Independence, MO Police. Christopher Cooper died later that night due to blunt force trauma. See *Mo. CN. 0716-CR06207-01*

12. That the Plaintiff was a passenger in the vehicle that struck Christopher Cooper. The Plaintiff was attempting to stop his brother who was under the influence of drugs and alcohol. The Plaintiff was not charged by the state in the incident.

13. That the Plaintiff returned to work at The Tom Urquhart School of baseball about a week after the incident and continued his instruction and his training.

14. That sometime after the death of her son, the Third Party learned through the media that Jose A. Pujols aka "Albert Pujols" was a relative of the Plaintiff.

**I. DEFAMATION** (against Pujols Family Foundation and Deidre Pujols)

15. That on or around December 6, 2007, the Third Party wrote an email to the Pujols Family Foundation directed at Jose A. Pujols. (See **Exhibit A** attached hereto and incorporated by reference herein.)

16. That the email written by the Third Party (Exhibit A) revolved around the "murder" of her son and the Defendant Jose A. Pujols' "cousins, Wilfredo and Wilfrido."

5

17. That on or around December 6, 2007, on behalf of Defendant, Jose A. Pujols, and the Pujols Family Foundation, Defendant Deidre Pujols, published a statement via email from info@pujolsfamilyfoundation.com ; In response to the statement the Pujols Family Foundation received from the Third Party. (See **Exhibit B and C,** attached hereto and incorporated by reference herein.)

18. That the statement was of and concerning the Plaintiff, Wilfrido Juan Pujols, as was understood by the Third Party and any reasonable person.

19. That the statement was signed by the Defendant Deidre Pujols.

20. That the statement was false and can to be proven to be a false statement of fact.

21. That the Defendant Deidre Pujols, published the statement well after the Plaintiff was cleared of any wrongdoing in connection to the death of the Third Party's son. On or around December 6, 2007, it was common knowledge that the Plaintiff was not charged or held responsible in any way for the death of the Third Party's son.

22. That at the time the statement was published to the Third Party,  Defendants Deidre Pujols and the Pujols Family Foundation, should've known that the statement could be exposed or republished to other members of the public.

6

23. That the statement was made with actual malice with intent to do harm to the Plaintiff in order to protect the image and interests of the Defendants.

24. That Defendant Deidre Pujols published words imputing the Plaintiff in the commission of a crime.

25. That Defendant Deidre Pujols states that the plaintiff committed "something so heinous" and that he "ruined many lives," in response to the Third Party's statement where the Third Party specifically identified the Plaintiff by name as someone who "murdered" her son.

26. That any reasonable person would conclude from the statement that the word "they" used in "**they** ruined" is to be in reference to the Plaintiff and his brother.

27. That any reasonable person would conclude from the statement that the words "**ruined many lives**" would be interpreted as to the life of Christopher Cooper, his friends, his family and/or his loved ones.

28. That after reading the full statement any reasonable person would conclude that the words "**something so heinous**" was mentioned in reference to the "murder" of the Third Party's son.

29. That on or around June 7, 2005, while at a Pujols Family Foundation Golf Tournament; Defendant Deidre Pujols, was one of the first to congratulate

the Plaintiff, live on ESPN Radio the day he was drafted by the St. Louis
Cardinals of Major League Baseball. Wherein the Plaintiff and Defendant
Deidre Pujols conversated "on air" about their relationship and the help that
he (Plaintiff) had received from "Albert" while attending the same High
School "Albert" had attended. Defendant Deidre Pujols, denying the close
relationship between the Defendants and the Plaintiff is both an example of
the Defendant's dishonesty and motive to defame and do harm to the
Plaintiff.

30. That in the defamatory statement, Defendant Deidre Pujols, in her own
words, states "we **represent** and are ambassadors of our faith, **our
families...**"

31. That the Third Party responded to the defamatory statement. (See **Exhibit C**
attached hereto and incorporated by reference herein.) In that statement she
is clearly apologizing to the Defendant Deidre Pujols, as she comprehended
and believed the defamatory statement sent from Mrs. Pujols was to be true.
It is unknown to the Plaintiff if there was any further exchange thereafter.

32. That the timing of the defamatory statement made by the Defendants and the
seriousness of the situation adds to the severity of the injury and cannot be

8

overlooked, as the criminal case (*Mo.CN. 0716-CR06207*) was still in the
discovery process.

## II.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(against all defendants)

33. Plaintiff repeats and re-pleads Paragraphs 16 through 33, inclusive, and
incorporates the same herein by reference.

34. That Defendant Jose A.Pujols, directed, approved and authorized the
defamatory statement published by the President of the Pujols Family
Foundation.

35. That Defendant Jose A.Pujols, knew or should have known that the
statement published by Defendant Deidre Pujols to the Third Party was false
and that it would cause injuries including reputational harm to the Plaintiff.

36. That in a recent phone conversation, Defendant, Jose A. Pujols, expressed
that he stood behind the statement published by the Pujols Family
Foundation, signed by Defendant Deidre Pujols to the Third party.
The Plaintiff received numerous outrageous "mafia style" threats from
Defendant Jose A. Pujols. The threats were in relation to the allegations
made in this complaint in Count I.

37. That the Defendant, Jose A. Pujols grew up with the Plaintiff in Independence, MO sharing the same addresses and is a blood relative of the Plaintiff.

38. That Defendant, Jose A. Pujols, had announced publicly on several occasions to the media, that he helped the Plaintiff achieve his status as a professional baseball player and would work closely to the Plaintiff as they were both players of the same organization and exclusively spoke well about the good character of his "cousin" (the Plaintiff).

39. That due to the Defendant Jose A. Pujols, being a relative of the Plaintiff and having an active role in his baseball career , anytime the Plaintiff is mentioned in the media or in the baseball industry the connection to the Defendant, "Albert Pujols" is automatic.

40. That the defamatory statement carried a lot of weight and influence coming from the direction of Defendant Jose A. Pujols, who at the time of the statement, was a superstar Major League Baseball Player.

41. That the Defendants acted reckless and maliciously with disregard to the well being of the Plaintiff, causing mortification and intentionally inflicting emotional distress to the Plaintiff.

## III. INJURIES

42. Plaintiff repeats and re-pleads Paragraphs 16 through 43, inclusive, and incorporates the same herein by reference.

43. That the defamatory statement exposed the Plaintiff to hatred, verbal abuse, harassment, loss of income, discrimination, malicious prosecution and damage to his professional baseball career. The Third Party shunned the Plaintiff and took to the internet for the following years stating that the Plaintiff should've been implicated and charged for the death of her son.

44. That due to the effects caused by the Defendants actions, the Plaintiff was no longer able to work or train at the Tom Urquhart School of Baseball due to him suffering serious emotional distress and injuries to his reputation.

45. That the defamatory remarks made about the Plaintiff adversely affected him in his personal life and as a professional in baseball as his reputation had been damaged by the publication and set off a fire of events that led to more damage.

46. That it was not possible for the Plaintiff to defend himself from the defamatory statement and the injuries that occurred thereafter until discovered.

47. That the Plaintiff and his family was left in shock when the statement was revealed to the Plaintiff.

48. That since the disclosure of the statement in November 2014, the Plaintiff
    has endured additional pain and suffering , mortification and serious
    emotional distress.

49. That the injuries impaired The Plaintiff's ability to stay on the baseball field
    to successfully sign a contract.

50. That the Plaintiff had invested many years of his life to the game of baseball
    and the torts committed by the Defendants have tarnished his career.

51. That neither the Pujols Family Foundation, Jose Alberto Pujols or Deidre
    Pujols, have attempted to retract the defamatory statement or to the least,
    have offered an apology since the day it was published; even after the
    Plaintiff's discovery of the statement.

52. Wherefore, by the acts alleged herein the Defendants acted with actual
    malice and intentionally caused injuries to the Plaintiff.

## IV. DISCOVERY OF TORTS

53. That on or around November 4, 2014, the Third Party disclosed the
    defamatory statement she received from the Pujols Family Foundation by
    posting it on the Facebook "wall" or site of the Plaintiff. See **Exhibit D,**
    attached hereto and incorporated by reference herein.

54. That before November 4, 2014 the Plaintiff had no knowledge of the torts committed or referenced in this complaint.

55. That on or around **November 12, 2014,** the Third Party forwarded to the Plaintiff, the correspondence between her and the Defendant Deidre Pujols, that took place on or around December 6, 2007 . See **Exhibit A, B and C,** attached hereto and incorporated by reference herein.

## V. MONEY DAMAGES

**The Plaintiff is seeking both actual and punitive damages.**

A. The Plaintiff is seeking actual damages for the economic loss, damage of reputation as a professional and a citizen; for pain and suffering, mortification, serious emotional distress, impairment of his ability to sign a baseball contract as a player and/or instructor, and further damages that could be discovered in a discovery process. The Plaintiff seeks compensation in actual damages in an amount to be determined at trial but no less than 7.5 million dollars.

B. The Plaintiff reserves his right to seek punitive damages in an amount to be determined at trial.

## VI. DISCOVERY RULE

13

The Statute of Limitations in the State of Missouri provides that the cause of

action (libel) must be brought to the court within two years; the cause of

action of intentional infliction of emotional distress is to be brought before

the court within five years. The Plaintiff has established that the 'Discovery

Rule' applies in this matter. Although the torts were committed on or around

December 6, 2007, the Plaintiff has filed this complaint within the two years

after the damages were sustained and "capable of ascertainment"; The torts

and injuries were discovered by the Plaintiff on or around November 4, 2014

while at his home computer.

### VII.  WRONGS MAINTAINED:

The Plaintiff maintains that the wrongs alleged in "Count I." of this

complaint are continuing to occur in the form of 'slander' at the present

time. Additionally, intentional infliction of emotional distress has occurred

as recently as July 25, 2016. These wrongful acts are affecting the Plaintiff's

ability to do his job and hurting his reputation as a self employed Sports

Agent and his LLC.

### VIII. PRAYER FOR RELIEF

Wherefore, the Plaintiff prays that the Court protects him from further

violation of his rights and provides the opportunity for a jury to hear his

14

complaint in order to seek relief and compensation for actual and punitive

damages and for further relief the court deems to be proper and just.


Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of

my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or

needlessly increase the cost of litigation; (2) is supported by existing law or by a

nonfrivolous argument for extending, modifying, or reversing existing law; (3) the

factual contentions have evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the

requirements of Rule 11

Signed this 19th day of October, 2016.

Wilfrido Juan Pujols
2450 SW Webster Ln.
Port Saint Lucie, FL 34953
(cell)949-449-3900
(fax)772-257-4163
(email)wil@teampujols.com