**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| WILFRIDO JUAN PUJOLS,            ) | |
| )| |
| Plaintiff,            ) | |
| )| |
| v.            ) | No. 4:16-CV-1644 CAS |
| )| |
| PUJOLS FAMILY FOUNDATION, et al.,            ) | |
| )| |
| Defendants.            ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion is fully briefed and ripe for review.[1]  For the following reasons, the Court grants defendants' motion to dismiss.

### I.  Background

Plaintiff Wilfrido Pujols is the cousin of defendant Jose Alberto Pujols, better known as Albert Pujols, a former St. Louis Cardinals baseball player and current first baseman for the Los Angeles Angels of Anaheim.  Plaintiff, who is a former professional baseball player, brings claims against defendants Jose Alberto Pujols ("Albert Pujols"); Albert Pujols's wife,  Deidre Pujols; and the Pujols Family Foundation, a not-for-profit organization.

---

[1]Also pending before the Court is plaintiff's "Motion for Leave to File Reply to Defendants' Response to Opposition Memorandum" and "Motion for Leave to File Surresponse to Defendants' Reply to Opposition Memorandum."  Docs. 43 and 44.  The Court will grant plaintiff leave to file a surresponse and direct the Clerk of Court to docket plaintiff's surresponse, which was attached to his motion. (Doc. 44)  The motion for leave to file a reply to defendants' response is denied as moot. (Doc. 43).

The allegations in the Amended Complaint ("Complaint") arise, in part, from an email exchange between Deidre Pujols, the President of the Pujols Family Foundation, and a third party, Cheryl Cooper. Plaintiff alleges, among other things, that Deidre Pujols defamed him in an email she sent to Ms. Cooper dated December 7, 2007. Ms. Cooper later copied the email from Deidre Pujols and posted it on plaintiff's Facebook wall on November 4, 2014. Plaintiff also alleges that defendants Deidre and Albert Pujols made other defamatory statements about him to other third parties, Kristen Peter and Todd Perry. Plaintiff further alleges that Albert Pujols made intimidating phone calls to his house and to his father.

Plaintiff brings one state law claim against defendants Albert Pujols, Deidre Pujols, and the Pujols Family Foundation for defamation (Count I), and one state law claim of intentional infliction of emotional distress against defendant Albert Pujols (Count II). Plaintiff alleges in his Complaint that he suffered injuries and damages as a result of defendants' conduct and is seeking "no less than 7.5 million dollars" in damages.[2]  Doc. 22 at 22.

In the motion before the Court, defendants move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the defamation claim on the following grounds: The statements in the December 7, 2007 email from Deidre Pujols are not defamatory because they are protected opinions; plaintiff has not suffered damages as a result of the email; defendants cannot be liable for the republication of the email; and any defamation claim arising from the email is time barred. In addition, defendants argue that plaintiff's allegations with regard to alleged defamatory statements made to Kristen Peter and Todd Peter are insufficient to state a claim. With regard to plaintiff's

---

[2]This Court has jurisdiction over the dispute pursuant to 18 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy is alleged to exceed $75,000.00.

claim for intentional infliction of emotional distress, Albert Pujols argues that the claim should be dismissed because plaintiff fails to allege sufficiently outrageous conduct, that his conduct was intended to cause extreme emotional distress to plaintiff, or that plaintiff suffered bodily harm as a result.

## II.   Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff need not provide specific facts in support of its allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008)(citing Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  Id. at 562 (quoted case omitted).  This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]."  Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S.

at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id; Fed. R. Civ. P. 8(a)(2).  Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

In this case, plaintiff is proceeding without the assistance of counsel. Pro se pleadings are to be liberally construed and are held to less stringent standards than those drafted by an attorney. Smith v. St. Bernards Reg'l Med. Ctr., 19 F.3d 1254, 1255 (8th Cir. 1994).  Nevertheless, pro se pleadings must not be conclusory and must state sufficient facts which, when taken as true, support the claims advanced.  Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). The Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded."  Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

### III.  Allegations in the Complaint

Plaintiff makes the following allegations in his Complaint:

Plaintiff is a former professional baseball player.  He has worked as a professional hitting instructor, and in 2016 he became a self-employed sports agent and formed Team Pujols Sports & Entertainment LLC.  Albert Pujols, a professional baseball player, is the Founder and Chairman of the Pujols Family Foundation.  Deidre Pujols, Albert's wife, is the President of the Pujols Family Foundation.  The Pujols Family Foundation is a not-for-profit that was organized to benefit people with Down syndrome, disabilities, or life-threatening illnesses, as well as children and families living in poverty in the Dominican Republic.

On November 9, 2007, plaintiff was a passenger in a vehicle driven by his brother, Wilfredo Pujols.  Wilfredo Pujols was under the influence of drugs and alcohol, and while he was being

-4-

pursued by law enforcement, Wilfredo Pujols's vehicle struck Christopher Cooper, who died that night due to blunt force trauma.  Wilfredo Pujols was charged with multiple felonies, including second degree murder.  Plaintiff alleges in his Complaint that he attempted to stop his brother, and he was not charged with any crime related to the incident.

On December 6, 2007, the mother of Christopher Cooper wrote an email to the Pujols Family Foundation directed to Albert Pujols.  She states in her email that her son "was murdered by your cousins, Wilfredo and Wilfrido Pujols on November 8, 2007."[3]  Doc. 22, Ex. A.  Ms. Cooper wrote:

> I will promise you, I will do everything in my power to see to it that Wilfredo Pujols spends as many years as possible in a jail cell, denied the joy of raising his own child.  Your money and fame will not buy his freedom or absolve him of murder, the murder of our most precious son, Christopher.  We will always fight to see to it that he suffers for as long as a murder conviction allows.  For as long as I live, I will be deprived of the love and company of my baby, and your cousin will pay, I swear it on the life and death of my child.

Id.

A response was sent from the email address Info@PujolsFamilyFoundation.org, which was electronically signed by Deidre Pujols and dated December 7, 2007 (the "2007 Email").  The 2007 Email states in full:

> Let me start off by telling you how sorry I am about the loss of your son's life.  It is with regret that I didn't send you a letter that I had written in the days following the tragedy.  I can't even pretend to know the measure of emotions that your family will ever go through.  It is most unfortunate that my husband has become connected to this event because he is well known.  We have never had a close relationship to these young men.  My husband and I have a close relationship with God and through His Son, Jesus Christ, we have learned through Scripture what kind of character that we want to be accountable to.  Let me assure you that in no way would we support these young men financially, legally or in any other means.  It is an awfully bold

---

[3]There is a discrepancy in the date.  Plaintiff alleges in the body of the Complaint that Christopher Cooper died on November 9, 2007.  Doc. 22 at 5.  Ms. Cooper states in her email that her son died on November 8, 2007.  Doc. 22, Ex. A.

> assumption to make that my husband or I would support something so heinous without knowing anything about us.  If you take a closer look at our website you will see that we represent and are ambassadors to our faith, our families and others.  These two young men have ruined many lives.  I pray that our court system will serve them justly.  I pray that God will continue to provide the strength that your family needs.

Doc. 22, Exs. B and C.

Plaintiff alleges that he was not told about these emails.  He maintains that the statements in the 2007 Email are false in that the email  was published "well after the Plaintiff was cleared of any wrongdoing in connection to the death of [Ms. Cooper]'s son.  On or around December 7, 2007, it was common knowledge that the Plaintiff was not charged or held responsible in any way for the death of [Ms. Cooper]'s son."  Doc. 22 at 7.  Plaintiff further alleges that the statements made in the 2007 Email were made with actual malice and the intent to do harm to plaintiff "in order to protect the image and interests of Defendants."  Id.

Plaintiff alleges in the Complaint that on November 4, 2014, Ms. Cooper disclosed the email she received from the Pujols Family Foundation by posting it to plaintiff's "wall" on his Facebook page.  He alleges that prior to November 2014, he had no knowledge of the 2007 Email.

Plaintiff further alleges in the Complaint that on July 19, 2016, during a conservation with Kristen Peter, the daughter of Pujols Family Foundation's CEO Todd Perry, "the Plaintiff learned that Defendants Deidre and [ ] Albert[ ] Pujols, exclusively told Mrs. Peter that the Plaintiff had 'felonies' for 'manslaughter;' she also stated to the Plaintiff that the Defendants Deidre and Albert Pujols 'swear up and down that you (Plaintiff) did two years in jail.'"  Doc. 22 at 10.  Plaintiff alleges that these statements were made in relation to the death of Ms. Cooper's son, and defendants made these statements to Mrs. Peter in order to deter her from associating with plaintiff.  Plaintiff

-6-

also alleges that "upon information and belief," defendants "have slandered [plaintiff] on other occasions to other persons, including to Todd Perry of the Pujols Family Foundation." Id.

For his claim of intentional infliction of emotional distress against Albert Pujols, plaintiff alleges that on July 25, 2016, at 2:28 p.m., Albert Pujols made a phone call to his house and made numerous outrageous "mafia style" threats. Doc. 22 at 13. The Complaint alleges that in this conversation, defendant Albert Pujols stated that if plaintiff decided to sue the defendants, "he would make sure that the Plaintiff gets put away for many years." Id. Plaintiff also alleges that defendant Albert Pujols stated that if plaintiff sued, talked to the media, or Major League Baseball, that he would "come after him." Id. Plaintiff further alleges that defendant Albert Pujols called plaintiff's father to see if plaintiff was "cooperating," and that someone claiming to be a private investigator called his father asking about plaintiff's whereabouts and "trying to intimidate" him. Id. at 14.

## IV.  Discussion

Jurisdiction in this case is based on diversity of citizenship, and the parties agree that Missouri law applies. The Court, therefore, must apply Missouri law "as declared by the Supreme Court of Missouri." Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011). "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." Eubank v. Kan. City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010).

### A.     Defamation

In a defamation action under Missouri law, a plaintiff must establish: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the

requisite degree of fault, and 6) damages the plaintiff's reputation." <u>Missouri ex rel. BP Prods. N. Am. Inc. v. Ross</u>, 163 S.W.3d 922, 929 (Mo. 2005) (en banc) (quoting <u>Overcast v. Billings Mut. Ins. Co.</u>, 11 S.W.3d 62, 70 (Mo. 2000) (en banc)).[4]  "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to defer third persons from associating or dealing with him." <u>Topper v. Midwest Div., Inc.</u>, 306 S.W.3d 117, 128 (Mo. Ct. App. 2010) (quoting <u>Deckard v. O'Reilly Auto., Inc.</u>, 31 S.W.3d 6, 19 (Mo. Ct. App. 2000) <u>overruled on other grounds by</u> <u>Hampton v. Big Boy Steel Erection</u>, 121 S.W.3d 220 (Mo. 2003) (en banc)).  "Whether a statement is capable of having a defamatory meaning is a question of law for the trial court. Words are to be taken in the sense which is most obvious and natural according to the ideas they are calculated to convey to those to whom they are addressed." <u>Id.</u> (citation omitted)

### 1.      Statements in the 2007 Email

Defendants move to dismiss plaintiff's claim of defamation based on the 2007 Email on a number of grounds, including that the statements contained in the email are not defamatory but rather are protected opinion. Statements of opinions are privileged under the First Amendment's guarantee of freedom of speech and cannot be the basis of a state defamation claim. <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 347 (1974); <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 283 (1964). Following Supreme Court law, Missouri has adopted "an absolute privilege for expressions of opinion, broadly holding that any alleged defamatory statements that 'can be characterized as opinions,' are 'subject to the First Amendment absolute privilege.'" <u>Smith v. Humane Soc'y of</u>

---

[4]"In a defamation claim where the plaintiff is not a public figure, the requisite degree of fault is negligence." <u>Deckard v. O'Reilly Auto., Inc.</u>, 31 S.W.3d 6, 18 (Mo. Ct. App. 2000).  For public figures, the requisite degree of fault is actual malice. <u>Nazeri v. Mo.Valley Coll.</u>, 860 S.W.2d 303, 309 (Mo. 1993) (en banc) (citing <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 280 (1964)).  The parties here do not address whether plaintiff is a public figure or a non-public figure.

United States, 519 S.W.3d 789, 799 (Mo. 2017) (en banc) (quoting Henry v. Halliburton, 690 S.W.2d 775, 787 (Mo. 1985) (en banc)).  "[T]here can be no liability under state defamation law for statements of opinion." Id. (citing Gertz, 418 U.S. at 339-40).  See also Henry, 690 S.W.2d at 787 ("If the alleged defamatory remarks can be characterized as opinions, they should be subject to the First Amendment absolute privilege.").

That said, "a statement labeled as an 'opinion' can be the basis of an actionable defamation claim if the alleged 'opinion' statement implies an assertion of objective facts." Smith, 519 S.W.3d at 799 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990)).  But this holding does not swallow the exception.  To be liable under Missouri defamation law, opinion statements must be provable as false. Id.  "[W]ords used as 'rhetorical hyperbole,' 'lusty and imaginative expression[s] of [ ] contempt,' and 'loose' language cannot reasonably be interpreted as stating actual facts." Smith, 519 S.W.3d at 800 (quoting Milkovich, 497 U.S. at 16-17).  According to Missouri's Supreme Court, "[t]he test to be applied to an ostensible 'opinion' is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." Id. (quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 314 (Mo. 1993) (en banc).  See also Overcast, 11 S.W.3d at 73.

Addressing the specific allegations in plaintiff's Complaint, plaintiff does not allege that the statements made in the 2007 Email were false on their face, but rather he claims the statements in the email imply criminal conduct that he did not commit.  In the 2007 Email Deidre Pujols wrote: "Let me assure you that in no way would we support these young men financially, legally or in any other means.  It is an awfully bold assumption to make that my husband or I would support something so heinous without knowing anything about us." Doc. 22, Exs. B and C.  Both sides appear to agree that "these young men" referred to both plaintiff and his brother, Wilfredo.  This is

about all the parties can agree upon with regard to these two sentences in the email.  Plaintiff argues that by using the phrase "something so heinous," Deidre Pujols is plainly referring to the crime of the murder of Christopher Cooper, and the 2007 Email "imput[es]" that plaintiff committed a crime, for which he was never charged or convicted.  Doc. 38 at 7.

The phrase "something so heinous" does not contain a fact that is provable as false.  It does not explicitly state or even imply that plaintiff committed murder, as plaintiff contends it does.  Rather, it is plain that Deidre Pujols was indignant and outraged by the senseless death of Christopher Cooper, who was struck and killed by a car driven by driver under the influence of alcohol and drugs.  It was this event that she described as "something so heinous."  Deidre Pujols does not state that the conduct was criminal, and the fact that she used the word "heinous" does not ascribe guilt to plaintiff for the murder of Christopher Cooper.  The statement is an imprecise description of the event.  It is a "subjective assessment," which is not provable as false.  Smith, 519 S.W.3d at 801.  And while the term "heinous" has a negative connotation, "a negative connotation alone does not make it actionable."  Id.  It is not reasonable to conclude that the statement "something so heinous" implies the assertion of objective fact, as plaintiff contends, that plaintiff murdered Christopher Cooper.  The Court finds that this statement is an opinion subject to the First Amendment absolute privilege.  See id.  See also Gertz, 418 U.S. at 347.

Plaintiff also takes umbrage to the statement:  "These two young men have ruined many lives."  Again, both sides appear to agree that "these two young men" referred to both plaintiff and his brother, Wilfredo.  Plaintiff contends that this statement implies he was culpable for the murder of Christopher Cooper, which he was not, and therefore it is defamatory.  The statement that plaintiff and his brother "ruined many lives" is not an objective fact that can be provable as false.  What

-10-

constitutes ruining a life is subjective.  In the Court's view, Diedre Pujols's use of the phrase

"ruined many lives" is similar to the use of the word "traitor" in a labor dispute, in that it was being

used in "a loose, figurative sense" and was "a lusty and imaginative expression of [ ] contempt."

Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin, 418 U.S. 264,

284-85 (1974) (finding the terms "scab" and "traitor" were protected speech and not subject to

liability under state defamation laws).  The statement that plaintiff and his brother had "ruined many

lives" was an expression of Deidre Pujols's opinion, albeit a pejorative one, and therefore is not

actionable in defamation as a matter of law.  See Smith, 519 S.W.3d at 802.

Plaintiff also alleges in his Complaint that the statement in the 2007 Email that "[m]y

husband and I have a close relationship with God and through His Son, Jesus Christ, we have

learned through Scripture what kind of character that we want to be accountable to" is defamatory.

Doc. 22, Exs. B and C.  Plaintiff alleges that this statement "could easily be interpreted that the

Defendant Deidre Pujols was implying that the Plaintiff was 'godless.'"  Doc. 22 at 8.  The Court

does not agree.  The statement is clearly about Deidre and Albert Pujols's own religious faith, not

that of the plaintiff.  There is nothing even about plaintiff in this sentence, let alone something that

is provable as false.  To hold that a positive statement about one's religion is necessarily defamatory

because it must imply another person is not religious is not supported in case law, and would be

entirely contrary to the First Amendment's guarantee of freedom of speech.  Gertz, 418 U.S. at 347.

In sum, none of the statements in the 2007 Email are actionable as defamation because they

are subjective statements of opinion.  The Court finds that no reasonable finder of fact could

conclude that the statements in the 2007 Email are assertions of objective facts.  Smith, 519 S.W.3d

at 800.  Because the Court finds as a matter of law that the 2007 Email does not contain defamatory

statements, it need not address whether plaintiff's claim based on the 2007 Email is barred by the statute of limitation, whether defendants can be held liable for the republication of the 2007 Email, or whether plaintiff has adequately pleaded damages stemming from the 2007 Email. Plaintiff's claim of defamation arising from the 2007 Email is dismissed for failure to state a claim.

### 2. Statements to Kristen Peter

Plaintiff also alleges in his Complaint that on July 19, 2016, during a conversation with Kristen Peter, "the Plaintiff learned that Defendants Deidre Pujols and Albert Pujols, exclusively told Mrs. Peter that the Plaintiff had 'felonies' for 'manslaughter,'" and that Kristen Peter also stated "that Deidre Pujols and Albert Pujols 'swear up and down that you (Plaintiff) did two years in jail.'"[5] Doc. 22 at 10. Plaintiff further alleges that defendants Deidre Pujols and Albert Pujols made these statements to Kristen Peter in order to deter her from associating with plaintiff.

Defendants move to dismiss the defamation claim based on alleged statements to Kristen Peter arguing that the alleged statements are not pleaded with the requisite specificity. Defendants contend that plaintiff has merely summarized the statements made to him by Kristen Peter, and that he does not provide the context for the communications, such as when the statements were made, or whether they were in writing or verbal. Defendants characterize plaintiff's allegations as not

---

[5]Plaintiff also alleges in the Complaint that "upon information and belief, the Defendants Deidre Pujols and Albert Pujols have slandered him on other occasions to other persons, including to Todd Perry of the Pujols Family Foundation." Doc. 22 at 11. This allegation is certainly not enough to state a claim of defamation as it does not contain the elements of defamation or sufficient factual matter to state a claim for relief. Ashcroft v. Iqbal, 129 S. Ct. at 1949. There is no indication as to what was said and therefore there is no way for the Court to review whether the statements rose to the level of defamation. Topper, 306 S.W.3d at 128 ("Whether a statement is capable of having a defamatory meaning is a question of law for the trial court.").

actual statements by Deidre Pujols or Albert Pujols, but rather a characterization of Kristen Peter's opinion about what Deidre Pujols and Albert Pujols allegedly believed.

The Court finds that plaintiff has pleaded with adequate specificity allegations with regard to these defamatory statements. Contrary to defendants' assertion, plaintiff did allege that the statements by Deidre Pujols or Albert Pujols were verbal. The verb "told" commonly denotes that the statements were verbal and, therefore, slander.[6] As the Missouri Supreme Court has noted, slander "consists by definition of mere fleeting speech." Nazeri, 860 S.W.2d at 313. As such, "the accuracy with which it is pleaded must depend upon the recollection of the original hearer," who, like here, "might not even be the plaintiff." Id. Accordingly, it is "pointless to demand absolute precision." Id. "All that is required is that there 'be certainty as to what is charged' as the slander." Id. (quoting Lorenz v. Towntalk Publ'g Co., 261 S.W.2d 952, 953 (Mo. 1953)). See also Hester v. Barnett, 723 S.W.2d 544, 557 (Mo. Ct. App. 1987) (finding complaint sufficiently pleaded allegedly false utterances).

Like the allegations in Nazeri, in this case some of the allegedly slanderous statements are pleaded in quotes, and others are pleaded without quotation marks. When addressing such a complaint, the Missouri Supreme Court has instructed a court is to "assume that the phrases enclosed in quotes are purported to be reproduced verbatim, or at least closely paraphrased. Conversely, we assume that the unadorned statements are more loosely paraphrased." Nazeri, 860 S.W.2d at 313. The allegations in the Complaint clearly charge that defendants Deidre Pujols and Albert Pujols made false statements to a third party, Kristen Peter, asserting that plaintiff had felonies for manslaughter, and that he served two years in jail. The Court finds the statements as alleged are

_____

[6]In general, libel refers to defamatory statements that are written, whereas slander refers to defamatory statements that are spoken. 50 Am. Jur. 2d Libel and Slander § 6. (2017).

defamatory because they falsely impute that plaintiff committed a criminal offense. <u>Wahl v. Marschalk</u>, 913 S.W.2d 432, 434 (Mo. Ct. App. 1996) ("A statement is actionable as slander if it falsely imputes to plaintiff the commission of a criminal offense.") (citing <u>Matyska v. Stewart</u>, 801 S.W.2d 697, 700 (Mo. Ct. App. 1991)); <u>Hester</u>, 723 S.W.2d at 556 (a "false imputation of crime" is defamatory).

Defendants also argue that claims arising from the statements to Kristen Peter fail because plaintiff pleads no specific, actual damages that arose from these alleged defamatory statements. The Court has carefully review the Complaint, and agrees.

Historically, damages were presumed for defamation <u>per se</u>, that is, defamation that harmed a person's trade or profession. <u>Nazeri</u>, 860 S.W.2d at 311. The Missouri Supreme Court in <u>Nazeri v. Missouri Valley College</u> discarded the distinction between defamation <u>per se</u> and defamation <u>per quod</u>. 860 S.W.2d at 313 ("We hold that in defamation cases the old rules of <u>per se</u> and <u>per quod</u> do not apply and plaintiff need only to plead and prove the unified defamation elements set out in [Missouri's Approved Jury Instructions] . . . ."). The court further explained that in all defamation cases under Missouri law, plaintiffs are required to show actual damages. <u>Id.</u> <u>See also</u> <u>Cockram v. Genesco, Inc.</u>, 680 F.3d 1046, 1053–54 (8th Cir. 2012) ("[A]ctual reputational harm is an absolute prerequisite in a [Missouri] defamation action.") (quoting <u>Kenney v. Wal-Mart Stores, Inc.</u>, 100 S.W.3d 809, 817 (Mo. 2003) (en banc).

In this case, plaintiff has combined all his claims of defamation in Count I, and in a separate section of the Complaint entitled "Injuries Caused by Defendants' Actions in Count I" (paragraphs 62-84), he lists a litany of alleged injuries that were caused by all the defamatory remarks defendants made about him. Doc. 22 at 15. More specifically he states:

-14-

> That the defamatory remarks made about the Plaintiff adversely affected him in his personal life and as a professional in baseball, as his reputation had been hurt by the publication and set off a fire of events that led to more damage, as will be explained in the following paragraphs.

Id. All of the factual allegations in the subsequent paragraphs, however, specifically relate to alleged injuries flowing from the 2007 Email, not the alleged defamatory remarks to Kristen Peter made in 2016. For example, plaintiff alleges that in 2008, Ms. Cooper refused to speak to him and "a mob of people" followed him in public harassing him and calling him obscene and discriminatory names. Doc. 22 at 16. He also alleges that in 2008, he fled the State of Missouri while on misdemeanor probation to be with family after abusing prescription medicines and contemplating suicide due to the threats and harassment from members of the community of Independence, Missouri. Id. Plaintiff also alleges that in 2009, Ms. Cooper shared the 2007 Email with a prosecutor, which somehow persuaded the prosecutor to extradite plaintiff back to Missouri, where he faced burglary charges, spent ten months in jail, and eventually pleaded guilty to a misdemeanor. Doc. 22 at 16-17 (citing to State v. Pujols, 0916-CR01559). Plaintiff further alleges in his Complaint that "due to the effects caused by the Defendants' actions, the plaintiff was no longer able to work or train at the Tom Urquhart School of Baseball due to him suffering injuries to his reputation. According to the school, because of the statements made about him on [G]oogle by [Ms. Cooper] and her supporters between the years 2008 and 2010." Doc. 22 at 17-18.

The Court has combed through this section of the Complaint, and it finds that all the alleged injuries occurred between 2007 and 2015, well before 2016 when plaintiff spoke with Kristen Peter. It is clear to the Court that the alleged injuries in paragraphs 62-84 do not arise from defendants' alleged defamatory remarks to Kristen Peter, but rather they all relate to the 2007 Email and its

republication in 2014, which the Court has found is not actionable as defamation because it contains subjective statements of opinion.

At this point in litigation, plaintiff need not set forth evidence that he suffered actual reputational harm as a result of the defendants' alleged defamatory remarks to Kristen Peter, but he "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf, 517 F.3d at 549 (citing Twombly, 127 S. Ct. at 1964-65 & n.3.) "The complaint must 'provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.'" Id. (quoting Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Plaintiff pleads no facts tending to show actual damages that arose from defendants' alleged defamatory remarks to Kristen Peter and, therefore, he has failed to state a claim. See id. (affirming dismissal of claim for failing to adequately alleged that defendants caused injuries to plaintiffs). See also King v. Union Station Holdings, LLC, No. 4:12-CV-696 SNLJ, 2012 WL 5351598, at *5 (E.D. Mo. Oct. 30, 2012) (dismissing defamation claim under Missouri law for, among other things, insufficient allegations regarding damages).

**B.      Intentional Infliction of Emotional Distress**

Finally, defendant Albert Pujols moves to dismiss plaintiff's claim of intentional infliction of emotional distress against him.  The Missouri Supreme Court has recognized the tort of intentional infliction of emotional distress. Nazeri, 860 S.W.2d at 316.  In order to state a claim of intentional infliction of emotional distress, a Complaint must adequately plead four elements: "(1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress." Polk v. INROADS/St. Louis, Inc., 951 S.W.2d 646, 648 (Mo. Ct. App. 1997) (citing Hyatt v. Trans World

Airlines, Inc., 943 S.W.2d 292, 295 (Mo. Ct. App. 1997)).  Although there is not a precise definition of what constitutes "extreme and outrageous" conduct, the Missouri Supreme Court has held that the conduct "must have been 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (en banc) (quoting Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969)).  The conduct must be "more than malicious and intentional" and a claim does not lie for mere "insults, indignities, threats, annoyances, or petty oppressions." Polk, 951 S.W.2d at 648 (citing Viehweg v. Vic Tanny Int'l. of Mo., Inc., 732 S.W.2d 212, 213 (Mo. Ct. App. 1987)).  "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Id. (citing Restatement (Second) of Torts section 46 cmt. h (1965)). "The court must determine whether an average member of the community upon learning of the facts alleged by plaintiff would exclaim 'outrageous!'" Polk, 951 S.W.2d at 648 (quoting Viehweg, 732 S.W.2d at 213)).

In this case, plaintiff alleges that on July 25, 2016, at 2:28 p.m., Albert Pujols made a phone call to plaintiff's house in which he made "mafia style" threats to plaintiff. Doc. 22 at 13.  Plaintiff alleges Albert Pujols stated "that if the Plaintiff decides to sue the Defendants, he would make sure that the Plaintiff gets put away for many years.  He stated that the Plaintiff does not have money for attorneys to go against him or any criminal charges he could bring up." Id.  "He further stated that if the Plaintiff sues him, talks to the media, or Major League Baseball about this situation, that he would come after him." Id.  Plaintiff also alleges that defendant Albert Pujols called plaintiff's father to see if plaintiff was "cooperating." Id. at 14.  According to the Complaint, the following

-17-

day, someone claiming to be a "Private Investigator" called plaintiff's father "trying to intimidate him" by "asking about the whereabouts of the Plaintiff and other questions that made the Plaintiff's father feel uncomfortable." Id.

"Missouri case law reveals very few factual scenarios sufficient to support a claim for [intentional infliction of emotional distress]." Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310 (8th Cir. 2009) (citation omitted).  The conduct alleged here – three intimidating phone calls, one of which is not even necessarily connected to defendant Albert Pujols – falls "well short of a level of extremity that could be said to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable." Gillis v. Principia Corp., 111 F.Supp.3d 978, 987 (E.D. Mo. 2015), aff'd, 832 F.3d 865 (8th Cir. 2016).  The standard itself states that a claim does not lie for mere "insults, indignities, threats, annoyances, or petty oppressions." Polk, 951 S.W.2d at 648 (emphasis added).  Based on governing Missouri precedent, the Court does not believe that the conduct alleged in the Complaint is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Gibson, 952 S.W.2d at 249 (quoting Warrem, 436 S.W.2d at 673).  See also Hodge ex rel. Skiff v. Hodge, 78 F.Supp.2d 29, 36 (N.D.N.Y. 1999) (applying New York law) (a husband's allegations that his wife's personal guardian made numerous harassing telephone calls to him were insufficient to state a claim for intentional infliction of emotional distress); Moses v. Prudential Ins. Co. of Am., 369 S.E.2d 541, 543 (Ga. 1988) (applying Georgia law) (threatening message left on former employee's telephone answering machine by his former supervisor did not rise to requisite level of outrageousness and egregiousness to reasonably and foreseeably result in mental distress, precluding employee from recovering for wilful infliction of emotional distress).

-18-

Plaintiff has failed to state a claim of intentional infliction of emotional distress as to defendant Albert Pujols.  Because plaintiff has not alleged conduct that is sufficiently outrageous to state a claim for intentional infliction of emotional distress under Missouri law, the Court need not address whether plaintiff must plead that Albert Pujols's conduct was intended to cause extreme emotional distress to plaintiff, or whether plaintiff suffered bodily harm as a result.  For these reasons, defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress is granted.

### V. Conclusion

In sum, the Court finds plaintiff has failed to state a claim for defamation.  The statements made in the 2007 Email are protected opinions and not statements of fact, and therefore are not actionable under state defamation law.  As for defendants Albert and Deidre Pujols's statements to Kristen Peter, the remarks were defamatory, but plaintiff has failed to allege any reputational injuries or damages that were a result of these remarks.  Finally, plaintiff has failed to state a claim of intentional infliction of emotional distress against Albert Pujols.  The conduct plaintiff alleges does not rise to the level of outrageousness such that it is actionable under Missouri law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Wilfrido Pujols's Motion for Leave to File Surresponse to Defendants' Reply to Opposition Memorandum is **GRANTED**.  The Clerk of Court shall detach and docket plaintiff's Surresponse, which was attached to the motion for leave. [Doc. 44]

**IT IS FURTHER ORDERED** that plaintiff Wilfrido Pujols's Motion for Leave to File Reply to Defendants' Response to Opposition Memorandum is **DENIED as moot**.  [Doc. 43]

**IT IS FURTHER ORDERED** that defendants Jose Alberto Pujols, Deidre Pujols, and the Pujols Family Foundation's motion to dismiss is **GRANTED**.  [Doc. 27]

An appropriate Order of Dismissal will accompany this Memorandum and Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  28th  day of September, 2017.